UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jason Frank, Michael Hutchins, Erich Peasley,
Marjorie Simmons, Willard Simmons, William
Waters, and Robert Wilhelm,

        Plaintiffs,

v.                                            Civ. No. 04-1018 (JNE/RLE)
                                            ORDER

Gold'n Plump Poultry, Inc.,

        Defendant.

---

J. Gordon Rudd, Esq., and Anne T. Reagan, Esq., Zimmerman Reed, P.L.L.P., and T. Joseph Snodgrass, Esq., Larson King, LLP, appeared for Plaintiffs Jason Frank, Michael Hutchins, Erich Peasley, Marjorie Simmons, Willard Simmons, Robert Wilhelm, and William Waters.

R. Scott Davies, Esq., and Mark G. Schroeder, Esq., Briggs and Morgan, P.A., appeared for Defendant Gold'n Plump Poultry, Inc.

---

Jason Frank, Michael Hutchins, Erich Peasley, Marjorie Simmons (M. Simmons), Willard Simmons (W. Simmons), Robert Wilhelm, and William Waters (collectively, Plaintiffs) brought this action against Gold'n Plump Poultry, Inc. (Gold'n Plump) alleging that Gold'n Plump has a practice of not fully compensating employees for time spent donning, doffing, and sanitizing their gear.  Plaintiffs bring their claims against Gold'n Plump under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2000) (count one); Minn. Stat. § 177.25 (2004) (count two); Wis. Stat. § 103.01-.03 (2004) and Wis. Admin. Code DWD ch. 274 (2004) (count three); Minn. Stat. § 177.254 (2004) and Minn. R. 5200.0120 (2003) (count four); and Wis. Stat. § 103.01-.03 and Wis. Admin. Code DWD chs. 272, 274 (2004) (count five).  They also allege common law claims, including breach of contract (counts six through nine), unjust enrichment (count ten), and quantum meruit (count eleven).  The case is before the Court on Plaintiffs'

1

Motion to Certify and Provide Notice of FLSA Claims and on Plaintiffs' Motion for Class Certification of State Wage and Hour Claims under Federal Rule of Civil Procedure 23.[1]  For the reasons set forth below, the Court grants Plaintiffs' motion with respect to the FLSA claims and denies as premature the motion for Rule 23 class certification of the state law claims.

## I.   BACKGROUND

Plaintiffs are present and former line and sanitation workers at Gold'n Plump's plants in Coldspring, Minnesota; Luverne, Minnesota; and Arcadia, Wisconsin.  Specifically, M. Simmons and Wilhelm are Second Processing line employees at Gold'n Plump's Cold Spring plant.  Waters is a former Second Processing line employee at the Arcadia plant.  Frank, Peasley, and W. Simmons are former full-time sanitation employees at the Cold Spring plant.  Plaintiffs have attested that they did not receive compensation during their employment at Gold'n Plump for time spent donning, doffing, and sanitizing their protective clothing and gear.

Gold'n Plump is a private corporation headquartered in St. Cloud, Minnesota.  Employing approximately 1,600 people in central Minnesota and Arcadia, Wisconsin, Gold'n Plump processes and markets chicken.  It sells fresh, frozen, and fully-cooked products in retail grocery stores and to restaurants, delis, and institutional food services.

Gold'n Plump produces its various poultry products in two or, in some cases, three stages. During First Processing, live chickens are received, taken out of the modular system used to transport them, hung on a line, stunned, and processed into whole-chilled birds whose heads, feet, feathers, and viscera have been removed.  During Second Processing, whole birds are packaged or cut up into parts and packaged in various configurations for shipment.  Finally, during Further Processing, additional processes, such as custom packing, co-packing, freezing,

---

[1]   Michael Hutchins does not seek to represent any class.

and stuffing deboned chicken breasts, are performed. First and Second Processing are performed at Gold'n Plump's Cold Spring and Arcadia plants; Further Processing is performed at the Luverne plant. Employees are required to wear different types of protective gear depending in part upon the tasks to which they are assigned within each processing stage.

In addition to employing First, Second, and Further Processing line employees, Gold'n Plump employed sanitation workers before 2004. The sanitation workers were responsible for cleaning and sanitizing their respective plants after each production shift; they were generally required to wear boots, hairnets, bump caps, earplugs, liners, and rain suits. Gold'n Plump outsourced its Cold Spring sanitation work to an independent contractor, Kaiser Services, beginning February 12, 2004; it outsourced its Arcadia sanitation work beginning March 27, 2004. Gold'n Plump has not employed any sanitation workers at the Luverne plant at any time relevant to this litigation.

## II.   DISCUSSION

### A.   FLSA Certification

Plaintiffs move to certify their FLSA claims under 29 U.S.C. § 216(b) and request that the Court authorize the issuance of notice to potential class members. Specifically, Plaintiffs propose certification of two FLSA subclasses. Subclass 1 would consist of "[a]ll present and former line employees processing chickens employed by Gold'n Plump from February 24, 2001 to the present." Subclass 2 would consist of "[a]ll present and former sanitation workers employed by Gold'n Plump from February 24, 2001 to February 12, 2004."

The FLSA allows employees to bring a collective action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to proceed as a collective action under the FLSA, the plaintiffs must show that the putative class members are

"similarly situated." *Id.* To determine whether the putative class members are similarly situated for certification of a collective action under the FLSA, courts use a two-step process. *Kalish v. High Tech. Inst., Inc.*, Civ. No. 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001)). At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. *Id.* At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. *See id.* at *2; *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (*Severtson I*). That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations. *Severtson I*, 137 F.R.D. at 267; *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992) (*Severtson II*). At the second stage—which comes after discovery is completed—the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed. *Kalish*, 2005 WL 1073645, at *1. At this second stage, the court conducts a fact-intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Thiessen*, 267 F.3d at 1102-03.

Plaintiffs assert that the case is at the initial stage of the two-step process and, therefore, the Court should apply the more lenient standard for determining whether the putative class members are similarly situated. Gold'n Plump asserts that the Court should apply the more stringent analysis because significant written discovery has occurred.

The Court finds that this case is at the initial stage. Although the parties have exchanged some written discovery, Gold'n Plump has declined to allow Plaintiffs' counsel to enter its plants and neither party has taken any depositions. In addition, the parties have stipulated to defer additional discovery pending the resolution of this motion. Substantial discovery has, in other words, yet to be conducted. The Court will therefore apply the more lenient standard for determining whether the putative class members are similarly situated. *See Kalish*, 2005 WL 1073645, at *2.

The Court turns to the question of whether Plaintiffs have come forward with evidence establishing a colorable basis that the putative class members are "the victims of a single decision, policy, or plan." *See id.* at *2.[2] According to Plaintiffs, the members of the proposed classes are similarly situated because they all experienced Gold'n Plump's practice of failing to pay its nonexempt workers for the time they spent donning, doffing, and sanitizing their clothes and equipment. Gold'n Plump maintains that Plaintiffs are not similarly situated because they work at different geographic locations and in different areas within the various plants, report to different supervisors who have autonomous decision-making authority, hold different job positions, work different hours, and don and doff different protective equipment. In addition, Gold'n Plump attributes particular significance to the fact that its line supervisors determine how employees are paid. According to Gold'n Plump, some employees are paid based on a supervisor punch, some are paid according to their scheduled start and stop time, some are paid according to their actual individual punch time, and some are paid using a combination of these methods.

---

[2]  At the initial stage, the Court does not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties. *Kalish*, 2005 WL 1073645, at *2; *Severtson II*, 141 F.R.D. at 278-79.

Mindful that Plaintiffs have a fairly low burden at this stage, *see Kalish*, 2005 WL 1073645, at *1; *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001), the Court finds that Plaintiffs have come forward with sufficient evidence that they and other prospective plaintiffs are similarly situated for purposes of conditional certification and facilitation of notice.  Plaintiffs' affidavits provide a colorable basis for concluding that Gold'n Plump has a common practice of failing to pay its line workers for time spent donning, doffing, and sanitizing equipment, and that Gold'n Plump had a similar practice with respect to the sanitation workers before it began contracting out sanitation services.  Each representative Plaintiff has averred that he or she is regularly denied pay for the time he or she spends donning, doffing, and/or sanitizing required equipment.  Moreover, Plaintiffs have presented evidence that Gold'n Plump received notice from the Department of Labor in May 2002 informing Gold'n Plump that failure to pay its employees for donning, doffing, and sanitizing time violated the FLSA.  Gold'n Plump's failure to address this notice and affirmatively require its supervisors to implement a practice of paying for donning, doffing, and sanitizing time is itself evidence of a single decision sufficient to warrant certification at this stage.[3]  Finally, the Court notes that although employees may be paid according to different punch methods, those differences do not necessarily defeat Plaintiffs' argument that they are similarly situated.  As Plaintiffs have indicated, even those employees who are paid according to their actual punch may, in fact, punch in after donning and punch out before doffing their equipment.  Discovery will reveal whether this is the case.  The Court concludes that Plaintiffs have satisfied their burden of demonstrating that they are similarly situated for purposes of conditional certification, notice, and discovery.

---

[3]   At this stage of the litigation, the Court does not consider whether Gold'n Plump's decision violated the FLSA.

Gold'n Plump maintains that the Court ought to decline to certify the class for the additional reason that Plaintiffs have failed to come forward with evidence that others wish to opt into this lawsuit. In support of its argument, Gold'n Plump relies on *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004), and *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231 (M.D. Ala. 2003). Assuming, without deciding, that these cases correctly state Plaintiffs' burden, the Court finds these cases distinguishable from the present one. In this case, unlike *Davis* and *Horne*, Plaintiffs have presented evidence that Gold'n Plump has discouraged its employees from participating in this litigation by suggesting that it has no merit. Nevertheless, six plaintiffs have joined the lawsuit. The Court finds that Plaintiffs have satisfied their burden of demonstrating interest among potential class members in the litigation.

**B.      Rule 23 Certification**

Plaintiffs also move to certify their state law claims under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs propose four subclasses, defined as follows:

- Subclass 1: All present and former line employees processing chickens employed by Gold'n Plump at its Cold Spring or Luverne, Minnesota poultry processing plants from February 25, 2001 to the present.

- Subclass 2: All present and former line employees processing chickens employed by Gold'n Plump at its Arcadia, Wisconsin poultry processing plant from February 25, 2002 to the present.

- Subclass 3: All former sanitation workers employed by Gold'n Plump at its Cold Spring or Luverne, Minnesota poultry processing plants from February 25, 2001 to February 12, 2004.

- Subclass 4: All former sanitation workers employed by Gold'n Plump at its Arcadia, Wisconsin poultry processing plant from February 25, 2002 to February 12, 2004.

To certify a class under Rule 23(b)(3), the Court must be satisfied that the requirements of both Rule 23(a) and Rule 23(b)(3) are satisfied. Under Rule 23(a), the party seeking class

certification must demonstrate: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b)(3) further requires the party moving for class certification to demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

A court may certify a class action only if it is satisfied after "rigorous analysis" that these prerequisites have been met. *See Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161 (1982). The strength of the plaintiffs' claims should not affect the certification decision, but the court "certainly may look past the pleadings to determine whether the requirements of [R]ule 23 have been met." *Thompson v. Am. Tobacco Co., Inc.*, 189 F.R.D. 544, 549 (D. Minn. 1999) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). "Indeed, going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.*

Gold'n Plump first argues that certifying an opt-out Rule 23(b)(3) class with respect to Plaintiffs' state claims would undermine congressional intent that FLSA classes proceed as opt-in classes. Gold'n Plump asserts that the Court should therefore decline to certify the state law claims.[4] The Court is not persuaded by Gold'n Plump's argument; courts routinely certify FLSA

---

[4] Gold'n Plump initially argued that the Court ought to decline to exercise supplemental jurisdiction over Plaintiffs' state class claims under 28 U.S.C. § 1367(c). It has since abandoned that position. The Court has nevertheless examined this issue carefully and sees no reason at this

8

opt-in classes and Rule 23 opt-out classes in the same action. *See, e.g.*, *Chavez v. IBP, Inc.*, No CT-01-5093, 2002 WL 31662302 (E.D. Wash. Oct. 28, 2002); *Trotter v. Perdue Farms, Inc.*, Civ. A. 99-893, 2001 WL 1002448 (D. Del. Aug. 16, 2001). Indeed, "the FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs . . . . Nothing in the [FLSA] limits available remedies under state law." *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 308 (D. Mass. 2004).

In the alternative, Gold'n Plump argues that the Court should defer ruling on Plaintiffs' motion. The Court agrees. As noted previously, discovery is at an early stage in this case. Neither party has conducted any depositions. Plaintiffs' counsel has not yet had access to the three Gold'n Plump plants. Moreover, Plaintiffs themselves acknowledge, albeit in a different context, that "the need for discovery continues" on the class issue. Indeed, a more developed record is required before the Court can determine whether common questions of fact and law predominate over individual issues. It would therefore be premature to rule on the merits of Plaintiffs' Rule 23(b)(3) class certification motion. Accordingly, the Court will deny for now Plaintiffs' Rule 23(b)(3) class certification motion. Plaintiffs may move anew for Rule 23(b)(3) when the record is more fully developed. At that point, both the parties—particularly Plaintiffs—and the Court will have a better understanding of the variety of Gold'n Plump's workers, their donning, doffing, and sanitizing practices, and the extent of Gold'n Plump's line supervisors' discretion as it relates to Plaintiffs' compensation. As a result, the Court will be better able to determine whether common issues predominate over individual issues.

---

stage of the litigation to decline to exercise supplemental jurisdiction over Plaintiffs' state claims. *See, e.g.*, *Chavez v. IBP, Inc.*, No CT-01-5093, 2002 WL 31662302, at *2 (E.D. Wash. Oct. 28, 2002); *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001).

## III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Certify and Provide Notice of FLSA Claims [Docket No. 23] is GRANTED.

2. Plaintiffs' Motion for Class Certification of State Wage and Hour Claims [Docket No. 17] is DENIED WITHOUT PREJUDICE to Plaintiffs' right to move for class certification when the record is more fully developed.

3. Within 30 days of the date of this Order, the parties shall submit a joint proposed notice. If the parties are unable to agree on the notice, each are ordered to file their preferred notices, together with briefing not to exceed ten pages per side no later than October 31, 2005.

Dated:  September 14, 2005

s/ Joan N. Ericksen\
JOAN N. ERICKSEN\
United States District Judge